UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL COHEN,

            Petitioner,

   v.

WARDEN MARCUS POLLARD,

            Respondent.

Case No. 19-cv-01980-JST

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

     Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Daniel Cohen, challenging the validity of his state court conviction.  ECF Nos. 1, 2.  Respondent has filed an answer to the petition,[1] ECF Nos. 16, 17, and Petitioner has filed a traverse, ECF No. 20.  For the reasons set forth below, the petition is DENIED.

## I.  PROCEDURAL HISTORY

     On January 21, 2016, a Santa Cruz County jury found Petitioner and his mother, codefendant Diana Cohen, guilty of first-degree murder with the special circumstance of lying in wait (Cal. Penal Code §§ 187(a), 190.2(a)(15)).  The jury also found true multiple firearm use enhancement allegations as to Petitioner.  Answer, Ex. 1 ("CT") at 1420-21, 1424-25.  On April 21, 2016, 2013, Petitioner was sentenced to life without the possibility of parole for the first-degree murder conviction, with an additional term of twenty-five years to life for the enhancement.  CT 1551, 1563-64.

---

[1] In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Marcus Pollard as respondent because he is Petitioner's current custodian.

1    Petitioner appealed.  CT 1553.  On or about January 11, 2017, Petitioner filed an *ex parte*

2    motion for appointment of an expert psychiatrist and for approval of funds in the California Court

3    of Appeal.  The state appellate court denied this motion on January 19, 2017.  ECF No. 2-2 at 5-

4    16.

5          On March 7, 2018, Petitioner filed a petition for a writ of habeas corpus in the California

6    Court of Appeal, which raised the claims presented in the instant petition.  ECF No. 2-1 at 43-172.

7          On October 24, 2018, the California Court of Appeal affirmed the judgement in an

8    unpublished opinion and denied the habeas petition.  ECF No. 2 at 4-20, ECF No. 2-2 at 20.

9          Petitioner filed petitions for review of the appeal and denial of the habeas petition in the

10   California Supreme Court.  ECF No. 2-2 at 22-131.  On January 30, 2019, the California Supreme

11   Court denied review of both petitions.  Ans., Ex. 5; ECF No. 2 at 22; ECF No. 2-2 at 172.

## II.  FACTUAL BACKGROUND

13         The following factual and procedural background is taken from the California Court of

14   Appeal's opinion:[2]

15         Gordon Smith was found dead on the floor at his office in Capitola
           on a November morning in 2013.  He had been shot four times,
16         including twice in the head.  Pooled blood around his body indicated
           he had been dead for some time.

17
           Police interviewed Smith's administrative assistant, who told them
18         Smith was in the property management business and had recently
           had some unusually negative interactions with two tenants he was
19         attempting to evict, defendants Daniel and Diana Cohen.  The
           assistant described defendants as "disgruntled" and "threatening"
20         and recounted an incident several weeks before when Daniel came
           to the office to confront Smith about an eviction notice.  Daniel was
21         erratic and angry and told Smith that proceeding with the eviction
           would be like "murdering his mom," who was in poor health.  After
22         the incident, Smith remarked to his assistant that he was relieved
           Daniel "didn't just come down and shoot" him.  The assistant also
23         relayed to police that on the day he was shot, Smith received a
           phone call from Daniel and became visibly upset during the
24         conversation.

25         Police obtained a warrant to search defendants' apartment and car.

26   _____

27   [2] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. Daniel*, 853
     F.3d 1049, 1052–54 (9th Cir. 2017).  Based on the Court's independent review, the Court finds
28   that it can reasonably conclude that the state court's summary of the prosecution case and the
     defense case is supported by the record, unless otherwise indicated in this order.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

While waiting for the warrant to be issued, a team of officers maintained surveillance on the apartment.  When defendants left in their car, several officers followed.  Police conducted a high risk vehicle stop, meaning defendants were ordered out of the car at gunpoint and forced to the ground.  While they were detained in the back of a police car, a recording device captured them discussing what to say if asked about their interactions with Smith.  They were transported to the police station where they were kept in separate rooms, held overnight, and questioned at length.

The search of defendants' apartment and car yielded four expended bullet casings and an invoice from a storage facility in Santa Cruz.  The invoice led police to a storage unit rented to Daniel Cohen.  Inside was a .357 caliber revolver.  The revolver had six bullet chambers; two bullets remained in the gun, and the other four chambers were empty.  Forensic analysis confirmed the bullets that killed Smith were fired from that gun, and that Daniel's fingerprints were on it.  DNA from a blood spot on Daniel's shoe was a match to Smith.

Statements from a used car dealer and witnesses at Smith's office, along with surveillance footage and records from the storage facility where the gun was found, chronicled defendants' activities the day of the killing.  That morning, they took an SUV from a used car dealership, purportedly for a test drive.  After obtaining the SUV— which Diana drove off the lot— they went to the storage facility (arriving at 12:38 p.m.), then left 14 minutes later.  They were next seen in the parking lot of Smith's office building at around 5:15 p.m.  The borrowed SUV was backed into a parking space with Daniel in the passenger seat.  Cigarette butts found in the parking lot had DNA from both Daniel and Diana.  Data extracted from an office computer indicated that Smith last used it at 6:42 p.m., at which time he would have been alone in the office.  Twelve minutes later, defendants were back at the storage facility (which is about a four-minute drive from Smith's office).

The Santa Cruz County District Attorney charged Daniel Cohen with first degree murder (Pen. Code, § 187, subd. (a)), with the special circumstance allegation that he committed the murder while lying in wait (Pen. Code, § 190.2, subd. (a)(15)), and several enhancements for personal use of a firearm.  (Pen. Code, §§ 12022.5, subd. (a)(1); 12022.53, subds. (b)–(d); 12022.53, subd. (d)).  Diana Cohen was charged with first degree murder under an aiding and abetting theory, with the special circumstance of lying in wait.  The jury found both defendants guilty of first degree murder and the special allegations true.  The trial court sentenced Daniel Cohen to life without the possibility of parole, with a consecutive 25-years-to-life term for the  Penal Code section 12022.53, subdivision (d) firearm enhancement.  Diana Cohen was sentenced to life without the possibility of parole.

*Cohen*, 2015 WL 5096044, at *1-*4.

/ / /

/ / /

3

**III. DISCUSSION**

**A.    Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "had substantial and injurious effect or influence in determining the jury's verdict."  *Penry v. Johnson*, 532 U.S. 782, 795 (2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at 405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the

4

United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991);[3] *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Section 2254(d) applies even where, as here, both the California Supreme Court and the California Court of Appeals summarily denied the state habeas petitions raising these claims. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011); *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "In these circumstances, [a petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the California Supreme Court's decision." *Cullen*, 563 U.S. at 187–88 (quoting *Harrington*, 562 U.S. at 98). In other words, where a state court issues a summary denial, "a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102. Even if a reviewing court would grant federal habeas relief upon de novo review, Section 2254(d) precludes such relief if there are "arguments that would otherwise justify the state court's result." *Id.*

## B.    Petitioner's Claims

### 1.    Ineffective Assistance of Counsel Claim

Petitioner alleges that he was denied effective assistance of counsel because trial counsel

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005). The look through rule continues as the Ninth Circuit held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

failed to investigate his mental health defenses.  Petitioner argues that trial counsel's consultation with Dr. Dondershine in the course of trial preparation alerted trial counsel to the existence of evidence that Plaintiff suffered from "folie a deux," a mental illness that would have caused his decision-making to be impaired; and that the consultation indicated that Petitioner had symptoms of mental disassociation.  Petitioner argues that trial counsel erred in not investigating this mental health defense by obtaining Petitioner's medical and mental health records which would have supported Dr. Dondershine's preliminary diagnosis.  Petitioner argues that the presentation of expert opinion evidence that Petitioner killed the victim while in a dissociative state arising out of his folie a deux psychotic disorder would have supported the sole defense theory presented and would also have supported a defense as to the premeditation element of first-degree murder.  ECF No. 1 at 2-4; ECF No. 2-1 at 59-86.  Petitioner also alleges that trial counsel erred in not investigating a not guilty by reason of insanity defense, and that the failure was due to trial counsel's misunderstanding of the law of insanity and the available mental health defenses.  Petitioner alleges that an investigation would have would have supported a valid defense of imperfect defense of another, a valid defense to the premeditation element of first-degree murder as set forth in *Cortes*, and a valid insanity defense as set forth in *Leeds*.  ECF No. 1 at 2-4; ECF No. 2-1 at 59-86.

### a.    Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the U.S. Supreme Court held that ineffective assistance of counsel is cognizable as a denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance, of counsel.  *Id.* at 686.  The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *Daire v. Lattimore*, 812 F.3d 766, 767–68 (9th Cir. 2016); *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

To prevail on an ineffective assistance of counsel claim, a petitioner must establish two things.

First, he must establish that counsel's performance was deficient, i.e., that it fell below an

"objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Ultimately, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy" under the circumstances. *Id.* at 689 (internal quotation marks omitted). A federal habeas court considering an ineffective assistance of counsel claim need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

A "doubly" deferential standard of review is appropriate in analyzing ineffective assistance of counsel claims under AEDPA because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); *see also Cullen*, 563 U.S at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). When section 2254(d) applies, "the question is

1    not whether counsel's actions were reasonable. The question is whether there is any reasonable

2    argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

3         A defense attorney has a general duty to make reasonable investigations or "to make a

4    reasonable decision that makes particular investigations unnecessary." *See Andrus v. Texas*, 140

5    S. Ct. 1875, 1881 (2020); *Weeden*, 854 F.3d 1063, 1070 (9th Cir. 2017) (investigation must

6    determine trial strategy; not other way around) ("The correct inquiry is not whether psychological

7    evidence would have supported a preconceived trial strategy, but whether Weeden's counsel had a

8    duty to investigate such evidence in order to form a trial strategy, considering "all the

9    circumstances.").  Counsel must, at a minimum, conduct a reasonable investigation enabling him

10   to make informed decisions about how best to represent his client.  *Ramirez v. Ryan*, 937 F.3d

11   1230, 1245-47 (9th Cir. 2019) (failure to investigate defendant's mental deficiency, which led to

12   "inaccurate and flawed report at sentencing," was deficient performance).

                        **b.      Analysis**

14        Petitioner argues that trial counsel behaved unreasonably, in violation of the Sixth

15   Amendment, when trial counsel failed to further investigate Petitioner's mental health after

16   consulting with Dr. Dondershine.  To support this argument, Petitioner proffers a declaration by

17   his appellate counsel, Marc Zilversmit.  Zilversmit states that Petitioner's trial counsel, Mitchell

18   Page, hired Dr. Harvey Dondershine to evaluate Petitioner prior to trial, and that Page told

19   Zilversmit that after he consulted with Dr. Dondershine, Page concluded that there was not a

20   viable insanity defense and did not investigate further expert testimony regarding mental illness as

21   applied to premeditation, malice, or imperfect self-defense.  Zilversmit reports that when he

22   contacted Dr. Dondershine in late 2016, Dr. Dondershine stated that his examination of Petitioner

23   indicated a long history of serious and worsening major mental illness, leading Dr. Dondershine to

24   suspect that Petitioner and his mother had a fused psychological state, and that Dr. Dondershine

25   asked trial counsel to obtain specific medical records, but never heard back from trial counsel.  In

26   January 2017, after obtaining and reviewing approximately 500 pages of Petitioner's medical and

27   psychiatric records, Zilversmit contacted Dr. Dondershine and provided a summary of the trial

28   testimony and the medical and psychiatric records.  Dr. Dondershine indicated that Zilversmit's

United States District Court
Northern District of California

1    summary tended to confirm his initial, tentative diagnosis that Petitioner and his mother had a

2    shared delusion and that Petitioner may have been in a dissociative state.  Zilversmit asked Dr.

3    Dondershine to provide a declaration in support of the state habeas petition, but Dr. Dondershine

4    suffered a stroke before he could do so.  ECF No. 2-1 at 92-114.  To further support his argument

5    that trial counsel's failure to further investigate a mental illness defense, specifically folie a deux,

6    prejudiced him, Petitioner also provides articles about folie a deux and the 500 pages of medical

7    and psychiatric records obtained by Zilversmit.  ECF No. 2-1 at 145-65.

8         Respondent argues that trial counsel could have reasonably decided that he did not need to

9    obtain Petitioner's medical and psychiatric records because (1) he could reasonably have decided

10   that Petitioner himself was an adequate and convenient source of information about his medical

11   and psychiatric history because, according to Zilversmit's declaration, Petitioner himself informed

12   Dr. Dondershine about his history of mental illness, including his hallucinations and shared

13   mother-son delusion of being poisoned by methamphetamine and because a licensed clinical

14   psychologist reported that Petitioner was a reliable historian after evaluating him on July 30, 2013;

15   and (2) trial counsel was already aware of Petitioner's extremely close relationship with his

16   mother.  Respondent further argues that trial counsel's failure to obtain and review Petitioner's

17   medical and psychiatric records cannot be considered deficient absent evidence that Petitioner was

18   uncooperative or his recollection was inadequate to permit trial counsel or Dr. Dondershine to

19   accurately assess the viability of an insanity or mental defense.  Respondent also argues that trial

20   counsel could have reasonably decided that there was overwhelming evidence of malice,

21   premeditation and deliberation, and lying in wait, that it would be reasonable to present a defense

22   of imperfect self-defense.  ECF No. 16-1 at 12-14.

23        The Court finds that trial counsel's failure to obtain Petitioner's medical records

24   constituted deficient performance.  Respondent's arguments are based on the erroneous premise

25   that medical and psychiatric records are unnecessary where the defendant is aware that he suffers

26   from mental illness and has reported the mental illness to either counsel or the consulting expert.

27   The Court does not consider the unsigned declaration drafted by Zilversmit for Page.  Although

28   Zilversmit believes that the declaration accurately reflects his discussions with Page, Page's

United States District Court
Northern District of California

refusal to sign the declaration casts doubt on Zilversmit's representation of its accuracy. Nonetheless, even without the draft declaration prepared by Zilversmit, there was ample evidence in the record that Petitioner suffered from mental health issues that may have been relevant to his defense: Petitioner's unfounded belief that the neighbors were running a methamphetamine lab, CT 89-90, 132; his unusually close relationship with his mother; his unkempt appearance, RT 6276; his statement to the police officers that his memory of everything after high school was fuzzy, Aug. CT 113; and letters to other neighbors threatening violence, RT 6268-70. Given this evidence, trial counsel could not reasonably have concluded that Petitioner was a reliable historian or that Petitioner's medical and psychiatric records would not support an insanity or mental defense. Given all the circumstances, trial counsel's general duty to make a reasonable investigation included obtaining Petitioner's medical and psychiatric records to determine whether Petitioner's reporting was accurate and whether it was necessary to have these records reviewed by an expert. Without Petitioner's medical and psychiatric records, trial counsel could not make an informed decision about whether further investigation into an insanity or mental defense was necessary. *See, e.g., Avila v. Galaza*, 297 F.3d 911, 924 (9th Cir. 2002) (failure to conduct reasonable investigation, despite virtual certainty that defendant did not commit the crime, constituted deficient performance because the information could have undermined the prosecution's case).

However, Petitioner has failed to demonstrate prejudice. In reviewing the reasonableness of the state court's summary denial of this claim, the Court may rely only on the record that was before the state court. *See Pinholster*, 563 U.S. at 180. Although Petitioner's medical and psychiatric records were before the state court, without the assistance of an expert witness interpreting the medical and psychiatric records, the Court cannot assess whether these records would have been supported an insanity or mental health defense, or otherwise affected the outcome of the underlying state proceeding. In other words, the Court cannot determine from the record before it if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, applying the required deference, the Court cannot say that the state court's summary denial of this

claim was contrary to, or involved an unreasonable application of, clearly established Federal law, or that the denial resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  The Court must DENY federal habeas relief on this claim.

### 2.     Ancillary Services Claim

Petitioner argues that the state court's denial of his request for funds for an expert to review his medical, psychiatric and Social Security records and provide an expert opinion denied his federal constitutional right to a mental health expert.  Petitioner argues that, in *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017), and *Ake v. Oklahoma*, 470 U.S. 68, 76-77 (1985), the Supreme Court held that the right to counsel includes the right to a mental health expert when the defendant's mental condition is relevant to his criminal culpability and potential sentence and the defendant's mental condition at the time of the offense was in question, and that, consequently, the state appellate court's denial of his request for funds to access an expert deprived him of his constitutional right to effective assistance of counsel and ancillary funds.  He further argues that there is a reasonable probability of a different result, namely a finding of not guilty by reason of insanity.  ECF No. 2-1 at 87-89.

Respondent argues that the Supreme Court's holdings in *McWilliams* and *Ake* only address the right to a mental health expert at trial; and that the Supreme Court has not clearly established the right to a mental health expert on appeal or on collateral review.  ECF No. 16-1 at 19-21.  The Court agrees.

"If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law." *Ponce v. Felker*, 606 F.3d 596, 604 (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)).  In *McWilliams*, the Supreme Court specified that the right to a mental health expert, as set forth in *Ake*, was in the context of trial, referencing the defense and the prosecution in its summary of *Ake*'s holding:

> Our decision in *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L.Ed.2d 53 (1985), clearly established that, when certain threshold criteria are met, the State must provide an indigent defendant with access to a mental health expert who is sufficiently available to the

United States District Court
Northern District of California

defense and independent from the prosecution to effectively "assist in evaluation, preparation, and presentation of the defense." Id., at 83, 105 S.Ct. 1087.

*McWilliams*, 137 S. Ct. at 1793.  Neither *McWilliams* nor *Ake* can be reasonably read as recognizing a right to a mental health expert at all stages of litigation.  Both these challenged the denial of access to a mental health expert during trial and neither case concerned a request for a mental health expert on appeal.  Petitioner is asking for an extension of the rule set forth in *Ake* and *McWilliams* to his situation, which is the denial of access to a mental health expert on appeal.

Because there is no clearly established right to a mental health expert on appeal, the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  Federal habeas relief is denied on this claim.

## C.      Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

/ / /

/ / /

/ / /

United States District Court
Northern District of California

1    The Clerk shall enter judgment in favor of Respondent and close the file.

2    **IT IS SO ORDERED.**

3    Dated:  April 4, 2022



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California